IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Joseph L. SOMMERS, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Joseph L. SOMMERS, Respondent-Appellant.

Supreme Court

*No. 2006AP2851–D. Oral argument November 3, 2010.
—Decided March 30, 2012.*

2012 WI 33

(Also reported in 811 N.W.2d 387.)

For the respondent-appellant there were briefs filed by *Joseph L. Sommers, pro se,* Oregon, and oral argument by *Joseph L. Sommers.*

For the Office of Lawyer Regulation, there were briefs filed by *Julie M. Spoke* and *Thomas J. Basting, Sr.,* and oral argument by *Julie M. Spoke.*

¶ 1. PER CURIAM. Attorney Joseph L. Sommers appeals a referee's recommendation that his license to practice law in Wisconsin be suspended for professional misconduct and that he be directed to pay a portion of the costs of the disciplinary proceeding. After exhaustive review and consideration, we approve the referee's findings of fact, conclusions of law and recommendations relating to discipline and costs. We suspend Attorney Sommers' license to practice law for 30 days, but we reduce, by one-half, the costs of the proceeding to be assessed against him.

¶ 2. We begin our discussion by noting that this has been a difficult case. Pending some five years, it has implicated not only the allegations in the Office of Lawyer Regulation's (OLR) complaint, but an OLR com-

plaint filed against Assistant District Attorney (ADA) Paul W. Humphrey, as well as a variety of unusual procedural developments, including Attorney Sommers' motion to substitute the first appointed referee, substantive motions regarding whether Attorney Sommers could pursue counterclaims against the OLR, Attorney Sommers' efforts to advance additional issues in the *Humphrey* disciplinary matter, Attorney Sommers' repeated challenges to the state of the record, extensive discovery, OLR's permissive appeal to this court regarding discovery and in camera review of OLR investigative files, the evidentiary hearing before the referee which Attorney Sommers declined to attend, various requests that all participating members of the court recuse themselves,[1] and this appeal, which was further delayed because of Attorney Sommers' challenge to the documents to be included in the court record on appeal.

¶ 3. Attorney Sommers was admitted to practice law in Wisconsin on September 3, 1992. He practices in Oregon, Wisconsin, and has proceeded pro se throughout this litigation. He has not previously been disciplined.

¶ 4. This disciplinary matter and the disciplinary matter involving ADA Humphrey both stem from counsels' respective conduct during the three and one-half year prosecution of Adam Raisbeck. Attorney Sommers defended Raisbeck and in April 2005, following a four-

---

[1] The participating members of this court, individually, have determined that none has a significant personal interest in the outcome of this disciplinary proceeding such as would require our disqualification. Each is satisfied that his or her impartiality in this proceeding is unimpaired and, further, that our acting in this matter does not create the appearance of a lack of impartiality. Accordingly, we have denied Attorney Sommers' requests for recusal and we address the merits of the appeal. *See* order dated April 14, 2009 (denying Attorney Sommers' motion for recusal).

day jury trial, Raisbeck was acquitted of homicide by negligent operation of a motor vehicle.

¶ 5. Because the OLR complaint against Attorney Sommers derives from his conduct during his defense of Raisbeck, a brief summary of the *Raisbeck* matter is necessary. On September 1, 2001, Raisbeck, then 17 years old, was the driver in a one-car rollover accident near Medina that killed one passenger and injured the other passenger. On December 12, 2001, Raisbeck was charged with negligent homicide by operation of a motor vehicle and reckless driving. Attorney Sommers, a friend of the Raisbeck family, was retained as Raisbeck's defense counsel. ADA Humphrey was the prosecutor.

¶ 6. The State claimed that Raisbeck was traveling at an excessive rate of speed when the accident occurred. Both parties considered the accident scene photographs critical. They disputed the meaning of certain tire markings seen in the pictures, argued over how Attorney Sommers was to obtain a set of the accident photos, and debated the opinions of accident reconstruction experts as to the speed of the vehicle and whether Raisbeck braked before entering the curve in the road where the accident occurred. As the litigation proceeded, Attorney Sommers became increasingly persuaded that the evidence for such a serious charge against Raisbeck was lacking, was based on error, and that ADA Humphrey and others were engaging in a cover-up to avoid acknowledging that critical evidence was faulty.[2] Attorney

---

[2] Indeed, this statement significantly understates Attorney Sommers' position regarding the *Raisbeck* case. Attorney Sommers' primary goal in this proceeding appears to be to persuade the court that ADA Humphrey knowingly used inaccurate expert testimony, suborned perjury from an expert, coordinated removal of exculpatory evidence (i.e., accident scene photographs) from a deputy sheriff's locker so the exculpatory mate-

Sommers' serious and sweeping allegations necessarily pervade this opinion as they pervaded the underlying litigation. However, it is important to recall that the case we decide today involves Attorney Sommers' appeal from a referee report concluding that Attorney Sommers committed professional misconduct warranting suspension of his license to practice law.

¶ 7. On November 17, 2006, the OLR filed a disciplinary complaint against Attorney Sommers alleging three counts of misconduct and recommending a 60–day suspension.[3] As noted, this case was extensively litigated; every procedural twist and turn cannot be recounted here. However, we mention a few specific

---

rials could not be produced in court, intentionally delayed disclosing exculpatory evidence, and intimidated defense witnesses by procuring a bench warrant against a witness for a trial that had been continued and when no subpoena had actually issued. Although ADA Humphrey was charged with professional misconduct, Attorney Sommers contends the OLR's allegations and recommended sanction are minor as compared with the evidence he feels he has provided to the OLR and the courts regarding ADA Humphrey's alleged misconduct.

Moreover, Attorney Sommers has asserted that the OLR and its staff are cooperating in a conspiracy to protect the district attorney's office as evidenced by what he perceives to be minor ethical charges against ADA Humphrey and unfair charges against him.

Attorney Sommers has also claimed that this court's actions, including its refusal to act sua sponte on Attorney Sommers' allegations or to intervene prematurely in this matter, along with perceived anomalies in the court records, demonstrate that this court is a participant in a "cover-up" by the district attorney and the OLR.

[3] A three-count disciplinary complaint against ADA Humphrey was filed the same week. The referee found violations and recommended a public reprimand. ADA Humphrey appealed. This court ordered the *Humphrey* disciplinary matter held in

587

procedural events. These provide some insight into the tangled complexity of this case.

## I. REFEREE SUBSTITUTION

¶ 8. Two referees have presided over this matter. Initially, both disciplinary complaints were assigned to Referee Russell Hanson. On August 3, 2007, Referee Hanson issued a report and recommendation in the *Humphrey* matter. On August 10, 2007, Attorney Sommers asked this court to replace Hanson as referee in his own disciplinary proceeding. This court granted Attorney Sommers' request, removed Referee Hanson, and on October 3, 2007, appointed Referee Stanley Hack. Although Attorney Sommers now makes scathing references to "this court's hand-picked" referee, the removal of Referee Hanson was permitted as a courtesy in response to Attorney Sommers' request and is not reflective of any finding of misconduct by Referee Hanson.

## II. COUNTERCLAIM AND COMPLAINTS AGAINST OLR

¶ 9. Attorney Sommers contested the allegations in the OLR disciplinary complaint and also sought to file a counterclaim against the OLR alleging misconduct by the OLR in the crafting of the disciplinary complaint. OLR moved to dismiss Attorney Sommers' counterclaim on the ground that the supreme court rules contain no procedure for permitting a formal counterclaim in an OLR proceeding. Attorney Sommers asserted that Referee Hanson initially indicated a counterclaim would be permitted and then concluded that

---

abeyance until further order of the court. The disciplinary proceeding against ADA Humphrey is being resolved in a separate opinion also issued today. *See In re Disciplinary Proceedings Against Paul W. Humphrey,* 2012 WI 32 (Case No. 2006AP2842–D).

instead, Attorney Sommers would be permitted to introduce evidence of OLR actions as an affirmative defense.

¶ 10. On February 29, 2008, Referee Hack dismissed Attorney Sommers' counterclaim but agreed that Attorney Sommers could present the substance of his arguments regarding alleged OLR misconduct as an affirmative defense. The decision was memorialized in a written order dated June 5, 2008. Attorney Sommers appeals this determination, maintaining his right to pursue a counterclaim. Indeed, he asserts that this court authorized Referee Hanson and Attorney Sommers, himself, to proceed with a counterclaim. He cites to a letter from the deputy clerk of court to Referee Hanson dated February 1, 2007. The referee had written to the court inquiring whether a procedure exists for evaluating a complaint made against the director of the office of lawyer regulation and OLR staff counsel. The response advised the referee that "SCR 22.25 provides a procedure for evaluating allegations of misconduct or malfeasance by lawyer regulation system participants." The letter does state, in response to the referee's inquiry, that "it would be appropriate for the referee to consider such allegations [against the OLR] in the context of the disciplinary proceeding in the form of a counter claim or challenge to the complaint, as you propose in your letter" and continues that if the respondent "is not satisfied with a referee's resolution of the matter, the respondent retains the right to appeal the referee's determination."

¶ 11. Ultimately, both referees declined to permit a formal counterclaim opting instead to allow Attorney Sommers to present evidence in the form of an affirmative defense. Attorney Sommers, not satisfied with this ruling, appeals.

¶ 12. We affirm the referee's decision to dismiss the counterclaim. We agree that the applicable supreme court rules do not contemplate a formal counterclaim in disciplinary proceedings. An individual alleging malfeasance by the OLR may file a complaint pursuant to SCR 22.25(8),[4] the rule that governs malfeasance complaints against the OLR director and staff.

¶ 13. Attorney Sommers is aware of this option. In addition to litigating this disciplinary case before the referee, Attorney Sommers has also written a series of letters directly to the court and individual justices trying to persuade this court to intervene in his case or to rule directly on various complaints and allegations against ADA Humphrey, the district attorney's office, the OLR, specific OLR staff, and others.[5]

---

[4] SCR 22.25(8) provides:

> Allegations of malfeasance against the director, retained counsel, a member of a district committee, a member of the preliminary review committee, a member of the board of administrative oversight, a special investigator, a member of the special preliminary review panel, or a referee shall be referred by the director to the supreme court for appropriate action.

[5] In his filings to this court Attorney Sommers has made allegations of unethical and/or criminal conduct against a number of entities and individuals including the Dane County District Attorney's office, the circuit court, the OLR, both referees, and most of the supreme court justices. He has specifically named the following individuals: ADA Humphrey, Detective Judith Boehm, Dane County Deputy Sheriff Gnacinski, Accident Reconstruction Specialist Robert Krenz, Deputy District Attorney (DDA) Judy Schwaemle, ADA Timothy Verhoff, District Attorney Brian Blanchard, Judge Paul Higginbotham, Judge Robert Pekowsky, Judge Daniel Moeser, OLR Director Keith Sellen, OLR Counsel Julie Falk (now Spoke), Referee Russell Hanson, Referee Stanley Hack, Chief Justice Shirley S. Abrahamson, Supreme

¶ 14. In December 2006, after the *Sommers* and *Humphrey* complaints were filed, Attorney Sommers filed a letter in the supreme court alleging malfeasance by the OLR. He sent a similar follow-up letter directly to the supreme court justices. These documents were submitted to the court for review pursuant to SCR 22.25(8).

¶ 15. The court typically considers such complaints against the OLR premature when—as here—the person alleging the malfeasance is presently the subject of a pending disciplinary matter. The complainant is typically advised—as Attorney Sommers was here—that his or her complaint against the OLR may be pursued when the underlying disciplinary matter has concluded. Accordingly, on February 12, 2007, the court issued a letter advising Attorney Sommers that, consistent with standard court procedure, an SCR 22.25(8) complaint against OLR is deemed premature when a complainant is presently the subject of a pending disciplinary matter.

¶ 16. On May 21, 2007, Attorney Sommers filed another letter directly with this court making allegations against the OLR and its staff. The court construed Attorney Sommers' letter as a renewed request to file an SCR 22.25(8) complaint. The court issued another letter dated August 29, 2007, reminding Attorney Sommers that he retains the option of filing an SCR 22.25(8) grievance against the OLR director upon conclusion of his pending disciplinary matters. *See also* order dated June 18, 2009 (advising Attorney Sommers that no

---

Court Justice N. Patrick Crooks, and various unnamed clerk's office staff who are accused of intentionally removing documents from the court record. These allegations far exceed the scope of the matter before the court today, and many of the named individuals have had no formal opportunity to respond to Attorney Sommers' claims.

action would be taken on premature requests for review of the OLR). These letters and the order dismiss Attorney Sommers' premature requests to commence an SCR 22.25(8) complaint against the OLR; they are not rulings in the *Sommers* disciplinary matter.

■

¶ 17. We affirm the referee's determination that Attorney Sommers may not advance a counterclaim against the OLR and reiterate that Attorney Sommers retains his right to file a complaint against the OLR pursuant to SCR 22.25(8) upon the conclusion of this litigation.

### III. DOCUMENTS CONTAINED IN THE COURT FILES

¶ 18. In the fall of 2007, Attorney Sommers alleged that documents were "missing" or had been "removed" from his court file and/or from the *Humphrey* court file. Accordingly, shortly after Referee Hack was appointed, he and Attorney Sommers and OLR counsel together undertook a review to ensure the integrity and completeness of the court files. Their review, conducted at the clerk's office, revealed that some documents apparently intended for the *Humphrey* file had been filed in the *Sommers* file and vice versa. The parties apparently agreed that the court files were complete after this review. Attorney Sommers has asserted that these documents were intentionally removed from the files. The referee, however, concluded that any filing anomalies were unintentional. We agree with that finding, noting that many of the documents in question were submitted to the court without proper caption and/or file numbers, greatly complicating the filing process in these related cases.

## IV. OLR'S APPEAL

¶ 19. Meanwhile, discovery in the *Sommers* matter continued. Attorney Sommers took many depositions including the depositions of nearly all of the judges involved in the *Raisbeck* case, the director of OLR, the chair of the District Committee investigating the *Sommers* and *Humphrey* matters, expert witnesses involved in the *Raisbeck* case, members of the district attorney's office staff, members of the Dane County sheriff's department, and others.

¶ 20. A dispute arose regarding Attorney Sommers' demand for disclosure of the OLR's investigative files pertaining to both Attorney Sommers and ADA Humphrey. Attorney Sommers wanted to ascertain whether OLR had followed up on his claims against ADA Humphrey, and also to see whether the Preliminary Review Committee had received the evidence he submitted when it made its decision to proceed in both cases.

¶ 21. OLR declined to produce the files citing confidentiality. Referee Hack directed the parties to brief whether OLR investigative files are confidential. On May 14, 2008, Referee Hack issued an order directing the OLR to produce its files to permit him to conduct an in camera review. OLR sought leave to appeal the May 14, 2008 order.[6] The court granted the OLR's request. Oral argument was heard in December 2008.

¶ 22. In February 2009 this court issued an order ruling that the order for in camera inspection of the

---

[6] The issue presented to the court was this:

Can a referee in a disciplinary proceeding order the Office of Lawyer Regulation (OLR) to provide him with full access to OLR's internal files, or should access be denied pursuant to SCR 22.40, PRIVILEGE and the work product doctrine?

files was overly broad, but permitting Attorney Sommers to pursue discovery of certain matters. Discovery continued.

¶ 23. Referee Hack conducted evidentiary hearings on August 15, August 28, September 8, and September 25, 2008, and then again on May 27 and May 28, 2009. According to Attorney Sommers, these hearings "revolved primarily around the issue of whether Humphrey and Krenz [one of the State's experts] conspired to present falsified expert analysis and testimony in *Raisbeck*." Referee Hack declined Attorney Sommers' request that he make specific factual findings on these matters, concluding this information was not sufficiently relevant to his determination of whether Attorney Sommers committed professional misconduct. The final evidentiary hearing was scheduled to begin on June 15, 2009.

¶ 24. Attorney Sommers, who disagreed with the referee's decision, opted not to appear at the evidentiary hearing. Consequently, Attorney Sommers did not present any evidence in his own defense. The referee denied OLR's motion for default judgment and required OLR to present its case. Both parties were invited to file post-hearing briefs. OLR filed a brief; Attorney Sommers did not.

¶ 25. The referee issued his report and recommendation on October 16, 2009. He recommended dismissal of Count One, found a clear violation of Count Two and, after describing Count Three as "more complicated," concluded Attorney Sommers had also committed misconduct with respect to Count Three. He recommended a 30–day suspension and suggested imposing two-thirds of the costs. Attorney Sommers appealed, the parties filed briefs, and this court conducted

oral argument on November 3, 2010.[7] The matter is now ripe for review pursuant to SCR 22.17(1).

¶ 26. This court will adopt a referee's findings of fact unless they are "clearly erroneous." *In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 874, 498 N.W.2d 380 (1993); *In re Disciplinary Proceedings Against Swartout,* 116 Wis. 2d 380, 382, 342 N.W.2d 406 (1984). The court does not grant deference to the referee's conclusions of law. *In re Disciplinary Proceedings Against Hetzel,* 118 Wis. 2d 257, 259, 346 N.W.2d 782 (1984), *cert. denied,* 469 U.S. 857, 105 S. Ct. 186 (1984); *In re Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 122, 310 N.W.2d 789 (1981).

¶ 27. We first consider the referee's factual findings. For purposes of this appeal, the OLR concedes that the referee's factual findings are not clearly erroneous. Attorney Sommers disagrees and asserts that the referee report is "riddled with omissions, half—truths and, in some instances, outright falsehoods." He provides a number of specific examples which we have carefully considered. In particular, Attorney Sommers objects to what he perceives to be an important lack of specificity in the referee's summary of factual events.

¶ 28. Attorney Sommers' objection to the factual findings highlights an issue present since the onset of this proceeding. For Attorney Sommers this case is primarily about what happened in *Raisbeck*—a series of

---

[7] The appeal in this matter was delayed nearly a year because Attorney Sommers failed to file a timely statement on transcript, and then asserted certain documents—namely deposition transcripts—were missing from the official court record. This generated a dispute and extensive file review which lasted from December 2009 to July 2010.

events he perceives to reflect gross injustice followed by extensive institutional cover-up.

¶ 29. For the referee—and for this court—the case involves whether the OLR has proved by clear and convincing evidence that Attorney Sommers committed the professional misconduct alleged in the OLR complaint. We conclude that the referee's decision not to add additional information to the report does not render the facts, vis-à-vis the pending disciplinary charges, "clearly erroneous." Having reviewed the entire record in this matter we are of the opinion that the factual findings set forth in the report, while not wholly comprehensive of the evidence proffered by Attorney Sommers, are not clearly erroneous.

¶ 30. We turn to the allegations against Attorney Sommers.

*Count One*

¶ 31. The first count of misconduct relates to allegations that Attorney Sommers falsely asserted in a motion there was no evidence that a subpoena had been served on a potential witness.

¶ 32. Kevin McCoy was an acquaintance of Sommers' client, Raisbeck. McCoy was present at a social gathering before the accident. McCoy made a routine statement to a Dane County sheriff's deputy that he had seen Raisbeck's passengers the evening before the accident but did not know where they went or who they were with after that. McCoy's innocuous statement was duly provided to Attorney Sommers during discovery.

¶ 33. On October 21, 2003, McCoy was asked to come into the district attorney's office to meet with ADA Humphrey for pretrial preparation. At the time, trial was scheduled for October 27–30, 2003, although both Attorney Sommers and ADA Humphrey expected

this trial date to be postponed. Deputy Steven Greiber ("Greiber") attended the meeting and took notes. During the meeting, McCoy told ADA Humphrey and Greiber that he had a conversation with Raisbeck after the accident in which Raisbeck made some specific comments about the accident and expressed regret for what happened. The details of this statement were deemed significant because previously, Raisbeck, who was injured in the accident, had stated he had no memory of the accident. Greiber told McCoy he might be served with a subpoena for a court appearance as a witness at the trial. The State maintains McCoy was subpoenaed for trial on October 27. Attorney Sommers contends he was not.

¶ 34. On October 23, 2003, Raisbeck's trial was postponed until January 20, 2004. During the week of October 27–30, 2003, McCoy did not appear at the Dane County Courthouse for trial.

¶ 35. On November 12, 2003, ADA Humphrey filed an Affidavit for Bench Warrant and Material Witness Warrant against McCoy asserting that McCoy had failed to appear on the October 27–30, 2003 dates and that this failure to appear was in violation of a previously served subpoena. A bench warrant commanding the arrest of McCoy was issued.

¶ 36. On January 7, 2004, ADA Humphrey disclosed McCoy's October 21 statements to Attorney Sommers via a cover letter stating that "[w]hile it is not discoverable, I thought I would send these notes aong [sic] anyway."[8] In early 2004, ADA Humphrey was removed from the *Raisbeck* case.

---

[8] Greiber had prepared a report dated October 27, 2003, summarizing the meeting with McCoy. ADA Humphrey did not provide Attorney Sommers with a copy of Greiber's report until January 7, 2004. At the time, trial was scheduled to commence

¶ 37. On February 24, 2004, Attorney Sommers (who maintains that McCoy was not properly subpoenaed for the October 27 trial date and that ADA Humphrey had sought to pressure and intimidate McCoy) sent a six-page letter to successor counsel, ADA Timothy Verhoff, that asserted in bold typeface: "**It appears that Mr. McCoy was never subpoenaed for the trial the week of October 27, 2003.**" In support of this assertion, Attorney Sommers attached, inter alia, a January 13, 2004 affidavit of Kevin McCoy.

¶ 38. On March 15, 2004, ADA Verhoff responded:

> I am unable to produce for you at this time a copy of the subpoena served on to Kevin McCoy for the trial week of October 27, 2003, as I am unable to locate a copy of it in the case file. I would note, however, Detective Janet Anderson [now Janet Boehnen] recalls serving the subpoena on Mr. McCoy on October 7, 2003.[9] The subpoena was served on him at 1614 N. Thompson Drive, #409, Madison. (Footnote not in original.)

¶ 39. After receiving this response, Attorney Sommers filed a Notice and Motion to Dismiss or Suppress dated May 4, 2004, in which he asserted to the circuit court that, "It appears that the bench warrant for Kevin McCoy was even in further bad faith in that there

on January 20, 2004, although it was later postponed again. The delay in communicating this report to Attorney Sommers formed the basis for one of the disciplinary charges against ADA Humphrey.

[9] Detective Janet Boehnen later testified that she remembered serving a subpoena on McCoy in early October 2003. She was able to provide evidence from her notes including the address, the date, and returning the subpoena to the victim witness coordinator. The actual subpoena for the October 27 trial date, however, was never located.

is *no evidence* that he was actually even subpoenaed for the trial the week of October 27, 2003." (Emphasis added.)

¶ 40. Count One of the disciplinary complaint filed against Attorney Sommers alleged that:

> By asserting on May 4, 2004, in a motion to suppress the testimony of witness Kevin McCoy that, "It appears that the bench warrant for Kevin McCoy was even in further bad faith in that there is no evidence that he was actually even subpoenaed for the trial the week of October 27, 2003" [Attorney] Sommers knowingly advanced a factual position without a basis for doing so that was not frivolous, in violation of [former] SCR 20:3.1(a)(2)[10] and knowingly made a false statement of fact to a tribunal in violation of SCR 20:3.3(a)(1);[11] and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c).[12]

This charge alleges several discrete ethical violations, namely, (1) knowingly advancing a position without a

---

[10] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to Chapter 20 of the Wisconsin Supreme Court Rules will be to those in effect prior to July 1, 2007.

SCR 20:3.1(a)(2) said that in representing a client, a lawyer shall not "knowingly advance a factual position unless there is a basis for doing so that is not frivolous; . . . ."

[11] SCR 20:3.3(a)(1) provided that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal, . . . ."

[12] SCR 20:8.4(c) said it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

basis for doing so that is not frivolous, (2) knowingly making a false statement to a tribunal, and (3) engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

■

¶ 41. The referee recommended dismissal of this count. The referee noted that although the State maintains a subpoena was properly served on McCoy, the actual subpoena was never located. The referee concluded that the evidence presented by OLR did not rise to the level of clear, convincing, and satisfactory evidence that Attorney Sommers' statement in the motion violated the aforementioned rules. The OLR has not appealed this recommendation. We adopt the referee's recommendation and we dismiss Count One of the OLR complaint.

¶ 42. We note that Attorney Sommers vehemently objects to the manner in which the OLR staff counsel litigated Count One, asserting, inter alia, that OLR staff misstated the record evidence in order to bolster an unsubstantiated claim against him.[13] As previously noted, allegations of malfeasance by OLR staff may be evaluated pursuant to SCR 22.25(8).

---

[13] As one example, in his brief Attorney Sommers asserts that OLR Counsel Julie Falk referenced a police report as stating that, "We served him [McCoy] with a subpoena." Attorney Sommers contends that the report actually stated, "McCoy was informed he may receive a subpoena for a later time as a witness." Attorney Sommers describes Attorney Falk's statement as a "blatant falsification." During discovery, Attorney Sommers sought sanctions against Attorney Falk from the referee. The referee denied this request on the grounds that he lacked authority to make such findings or sanction counsel for alleged misconduct because such allegations would be governed by SCR 22.25.

*Count Two*

¶ 43. The second count of misconduct alleged in the OLR complaint relates to statements made by Attorney Sommers at a pretrial hearing in the *Raisbeck* matter before the Honorable Robert R. Pekowsky.

¶ 44. On May 24, 2004, Judge Pekowsky was scheduled to hear arguments concerning pretrial motions in *Raisbeck*. At the hearing, Judge Pekowsky expressed concern because someone had placed fliers on potential jurors' cars in the court parking lot containing factual information and evidence related to the *Raisbeck* matter. DDA Judy Schwaemle testified that, upon a review of the flier, it was her opinion that Attorney Sommers must have contributed to the information contained within the flier.

¶ 45. Attorney Sommers then made several statements to Judge Pekowsky that form the factual basis for the second count against him. Attorney Sommers stated:

> I mean, Your Honor, this is — You're to a certain extent, I guess, part of the problem that I have right now. And I don't mean to get the Court upset, but to a certain extent I'm like a mathematician who is being forced to provide or try to disprove that two and two is five. . . .

> Your Honor, I guess one thing I can just say, Your Honor, I don't know. I think that I don't want to say this — I don't know how to say this without offending the Court, but I don't know what else to say. . . . I believe it is my opinion that this Court is absolutely determined not to give him [Raisbeck] a fair trial in order to cover up for the State.

> And because of that I believe that his potential to be acquitted in this case is going to be reduced for the

601

obvious reasons. . . . I believe it is absolute. My opinion is —

It's obvious this Court is going to close us off. It's obvious that this Court is going to — Both times today when this Court has carefully — everything has been carefully cut off, there is no answers and the whole thing about the emails was right when — they know and I got to believe this Court knows it was going to go for the evidence that would show that Judy Schwaemle [Dane County DDA] and Brian Blanchard [Dane County's elected DA] were involved in the whole thing.

And everybody has been orchestrated throughout this proceeding to cut it off at that moment. You cut it off right now at that moment. You've cut everything off, everything in this case is done to keep the cover-up going. That's my belief.

I believe that your intention in this trial is to do everything that you can, because apparently, Judge, it's just too dirty, you can't take it.

The bottom line is he's the one going — that's going to pay the price. You cover up for them, his right to a fair trial is going to be strongly, adversely affected by it.

¶ 46. Judge Pekowsky responded to Attorney Sommers' statements:

I'm going to tell you something: What you just said is extremely insulting. Though you never use the word conspiracy between myself and any of the DA's, you came very close to suggesting this is orchestrated — you used that word — and I can tell you I deeply resent that. And it is nearly contentious of you to bring that to this public forum today.

¶ 47. Judge Pekowsky and Attorney Sommers then had the following exchange:

THE COURT: You know, you can make most of your comments without further reference to me, whether you think that I'm going to treat you fairly or not, but — So confine your comments, use good judgment, and confine your comments not to what you think I might do, make your arguments and be quiet. I don't think that's asking too much. Your innuendo time and time again, and not so much of an innuendo, is that I've already decided how to rule and this is carefully orchestrated and that somehow you say it publically [sic].

MR. SOMMERS: And I will again and again.

THE COURT: I know you will. And I'm telling you not to do it again in this proceeding. You have the opportunity to go public outside this courtroom, and you certainly have an opportunity to express your opinion. But this is so detrimental to the proceeding, it absolutely detracts from everything.

¶ 48. Attorney Sommers then accused Judge Pekowsky of "glossing over" what he deemed a misrepresentation that the prosecutors made to Judge Pekowsky on May 7, 2004. Attorney Sommers told Judge Pekowsky, "You go out of your way — Even today you go out of your way as much as you can just to ignore it — to have tunnel vision and say we can't acknowledge it." Judge Pekowsky cautioned Attorney Sommers to "[s]tick to business here" and admonished Attorney Sommers: "It is apparently very easy for you to accuse anyone of almost anything as you have done in —," at which point Attorney Sommers interrupted, yelling at Judge Pekowsky, "Your Honor, how dare you ever say that about me." Attorney Sommers then stated to Judge Pekowsky:

You won't give me a hearing. You won't let me put — You say how dare you accuse me when you will not

put a witness on the stand. You've gone out of your way to prevent any — any evidence at all. You've gone out of your way. You won't even address the fact that he [Humphrey] has lied to you and the whole thing. You won't address anything.

Why don't you just be honest and say: You know what, we don't care folks, we don't care. These people matter. They're the club. They're powerful. They matter. Adam Raisbeck doesn't count. Why don't you be — Why don't just you [sic] be honest about it, damn it?

¶ 49. Judge Pekowsky responded to Attorney Sommers, "Sir, you are totally out of control." Attorney Sommers replied, "I'm not — Judge, I am basically frustrated by the fact that this is now over the top." Judge Pekowsky responded:

You're not only disrupting this proceeding completely but obviously almost everybody in this entire hallway if not the building has heard you now shout — yell at the top of your voice. There is no reason for this, and you're out of control, . . . .

¶ 50. Moments later, when Attorney Sommers again interrupted Judge Pekowsky, the judge told Attorney Sommers:

Quiet. No more talk. Let me talk. You are so totally out of control. I have never, since 1976 on the bench, ever seen anyone so out of control in the courtroom. . . .

You wonder why all these bailiffs are in here, because we don't have this kind of disturbance. And when we do, it's ordinarily a defendant who is outraged about something. Should I hold you in contempt for your behavior today? It's totally out of line. Totally out of line. You're out of control.

¶ 51. Attorney Sommers then told Judge Pekowsky:

What I'm saying is, you, though, for whatever reason, because maybe you have too much of a [sic] invested stake in the whole thing, you just cannot come to terms with what has happened in this case, and you are refusing and you are stubbornly refusing to come to terms with what is going on up to this very moment . . . . I take this case seriously. Adam Raisbeck is a son of Owen Raisbeck who has been one of my dearest and closest friends, and that has a lot to do with why I've done this.

¶ 52. After listening to Attorney Sommers for a few more moments, Judge Pekowsky stated:

THE COURT: Can you stop, please, Joe? Joe Sommers listen to me. I don't think I've ever done this across the bench before. I have read this file twice. This is not the first time that it appears that you're an attorney that's out of control. The record reflects that. And it clearly does today. Oh, it isn't going to reflect the amount of volume that you had or how totally out of control you were, that it required six, seven, eight bailiffs in here to see what was going on to protect the dignity of the Court which diminished entirely with your outrageous demeanor.

. . .

I understand passion. I've seen many of the defense attorneys that are sitting here passionate — passionate about what they do. They don't react in the manner that you just did. They don't — They tend to let go. They tend to make their case. They tend to make their motion, and if they lose it, they know there's an appellate route. There is a way to get someone to review this.

I seriously question whether you've got yourself together, Joe Sommers. I'm sorry. But you are not in

control. I am very fearful of going forward with a jury, it's almost a certain mistrial. It is almost impossible to get you to stop talking, and there was no stopping you minutes ago when all those bailiffs — there was no stopping you, nothing I said or could have done.

. . .

And I'm trying very hard, very hard to be fair under what I consider extraordinarily difficult proceedings today. Very difficult.

I — I'm just amazed at how out of control you have become. And today kind of the last nail in the coffin, so to speak, is when you tie me into the conspiracy. And you said oh, no, it's not quite a conspiracy, you have a good record, Judge, for all these years, but this morning there was an orchestration with these people here—

MR. SOMMERS: That's not what I'm saying. You can't understand what I'm saying?

THE COURT: I think I understand quite well. I'll bet you if I took a poll in here everybody would say that you are outrageously rude to me.

MR. SOMMERS: And I bet if you took a poll in here everybody would say this is a kangaroo court.

THE COURT: That's another thing that might cost you your license along the way. Couldn't you be just — Do you realize what you just said?

¶ 53. Attorney Sommers later stated to Judge Pekowsky:

Now and again, so I can clarify, I have not said that there has been a conscious orchestration between you and the district attorney's office in this case before today or today.

What I am saying is, though, that basically it comes down to it — This is — I guess I'm more accusing you

606

of a lack of nerve. So I guess if it sounds better, it's better. But I'm accusing you of a lack of nerve. I'm accusing you of the lack of nerve to basically have the courage to come to terms with what has happened and to even enforce your own orders.

¶ 54. Further context for these remarks was obtained at the 2009 evidentiary hearing before the referee. Judge Pekowsky testified that throughout Attorney Sommers' statements, Attorney Sommers was not looking to Judge Pekowsky but was speaking to "his" (i.e. Attorney Sommers') audience in the courtroom and that the entire courtroom was "frozen" during Attorney Sommers' tirade. Judge Pekowsky testified that the deputies in the courtroom kept getting closer to Attorney Sommers and he was afraid they would confront Attorney Sommers and cause a fight. Judge Pekowsky recalled that at one point during the May 24, 2004 hearing Attorney Sommers was so loud—louder than anyone Judge Pekowsky had ever heard speak "in any courtroom at any time before"—up to nine bailiffs rushed into the judge's courtroom "because they were concerned there was a huge fracas going on down here and somebody was going to get hurt and they had to intervene." Judge Pekowsky estimated that "most of the second floor of the City County Building" was disrupted by Attorney Sommers' behavior.

¶ 55. Count Two of the OLR complaint alleged, and the referee found as follows:

By engaging in loud, disorderly, contemptuous or insolent behavior during a hearing in the Raisbeck case on May 24, 2004; and by accusing Judge Pekowsky falsely—or with reckless disregard to truth or falsity—of covering up for the District Attorney's office, having tunnel vision, having a vested interest in the

607

State's case, lacking nerve to enforce his own rulings, and running a kangaroo court, [Attorney] Sommers engaged in conduct intended to disrupt a tribunal in violation of SCR 20:3.5(c);[14] and made statements known to be false or with reckless disregard as to their truth or falsity concerning the integrity of a judge, in violation of SCR 20:8.2(a);[15] and violated the Attorney's Oath, SCR 40.15, which states in pertinent part, "I will maintain the respect due to courts of justice and judicial officers," contrary to SCR 20:8.4(g).[16]

¶ 56. Attorney Sommers appeals. He states:

Much has been made by OLR and this court's appointed referee of defense counsel's outburst on May 24, 2004; wherein he characterized the proceedings as a "kangaroo court." What has been glossed over is Judge Pekowsky's actions on that date. First, he refused to address a whole slew of issues relating to prosecutorial misconduct that he conceded were legitimate when deposed. Second, he took strong exception to DDA Schwaemle's affidavit being challenged, despite it being pointed out to him that her affidavit and in—court statements were clearly implausible. Third, he took strong exception to the notion that the DA's Office was "conspiring with Mr. Krenz to put together something other than an independent expert's opinion." He followed this up by ruling that Krenz could not be

---

[14] SCR 20:3.5(c) stated a lawyer "shall not . . . engage in conduct intended to disrupt a tribunal."

[15] SCR 20:8.2(a) provided as follows:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

[16] SCR 20:8.4(g) provided it is professional misconduct for a lawyer to "violate the attorney's oath."

impeached with statements Humphrey attributed to him in court submissions. Fourth, he declared that the case should settle and adjourned the proceedings for a possible settlement to be reached, which could only happen if Raisbeck pled out. And fifth, not content with ignoring the numerous sworn affidavits, and denying Sommers the opportunity to present evidence substantiating the affidavits, Judge Pekowsky accused Sommers of dealing in "innuendo time and time again," and finding it "very easy to accuse anyone of almost anything."

¶ 57. Attorney Sommers further states:

> It is also respectfully submitted that, while Atty. Sommers may have chosen better words than "kangaroo court" to characterize the proceedings in *Raisbeck*, truer words, objectively, were never spoken. In addition, the fact is, as this court knows, Atty. Sommers has been irreparably harmed, if not completely professionally and financially ruined, by the outrageous proceedings that have been orchestrated in this matter. One can only hope that at some point truth and decency will win out, and this court will act accordingly.

¶ 58. In his reply brief, with respect to Count Two, Attorney Sommers again reiterates his belief that Judge Pekowsky's decision to accept an affidavit and in-court assertions from DDA Schwaemle relating to the McCoy subpoena matter justified his outburst. He adds: "Atty. Sommers' assertions in court on that day inferring a kangaroo court, while maybe disrespectful, were clearly made in good faith."

¶ 59. Count Two of the OLR complaint alleges several separate ethical violations: (1) that Attorney Sommers engaged in conduct intended to disrupt a tribunal, (2) that Attorney Sommers made statements known to be false or with reckless disregard as to their

truth or falsity concerning the integrity of a judge, and (3) that Attorney Sommers' statements violated the Attorney's Oath. We consider each of these allegations in turn.

■

¶ 60. First, we consider whether Attorney Sommers engaged in conduct intended to disrupt a tribunal in violation of SCR 20:3.5(c). The referee explicitly found that Attorney Sommers engaged in conduct intended to disrupt a tribunal in violation of SCR 20:3.5(c). We agree. Attorney Sommers' conduct unquestionably disrupted a tribunal. *See In re Disciplinary Proceedings Against Eisenberg*, 2004 WI 14, 18, 269 Wis. 2d 43, 675 N.W.2d 747. Judge Pekowsky testified that Attorney Sommers' outburst "so totally disrupted this case, and for that matter, most of the second floor of the City County Building, that it was one of the most major disruptions that I have seen." Attorney Schwaemle's testimony corroborated the judge's statement.

¶ 61. The uncontested record evidence also supports the referee's conclusion that Attorney Sommers intended this disruption. Attorney Schwaemle testified:

> [Attorney Sommers'] behavior, however, was extremely unruly and frightening to anybody who was there. He was loud. He pounded on the table. It was shocking to me. I had never seen such a performance in a courtroom, such a disrespectful performance in a courtroom. Bailiffs came in number because he could be heard apparently out in the hall, and bailiffs came without being summoned. They could hear shouting from the courtroom and — . . .
>
> His tirade went on a little bit, and there was pounding on the table, and his voice was certainly raised, and he

was red faced, and *so I don't think he was out of control but — because I think it was somewhat deliberate on his part.*

(Emphasis added.) Similarly, the referee commented that Attorney Sommers' outburst was directed to "his audience" in the courtroom. Attorney Sommers does not argue otherwise.

¶ 62. Next, we consider whether Attorney Sommers made statements to Judge Pekowsky known to be false or with reckless disregard as to their truth or falsity concerning the integrity of a judge, in violation of SCR 20:8.2(a). Attorney Sommers made a number of statements to Judge Pekowsky that concerned Judge Pekowsky's integrity as a judge:

- "I believe it is my opinion that this Court is absolutely determined not to give him a fair trial in order to cover up for the State."

- "And everybody has been orchestrated throughout this proceeding to cut it off at that moment. You cut it off right now at that moment. You've cut everything off, everything in this case is done to keep the cover-up going. That's my belief.

 I believe that your intention in this trial is to do everything that you can, because apparently, Judge, it's just too dirty, you can't take it."

- "But I think right now he has — I believe I owe it to him. I believe they're trying to railroad you like you never tried to railroad somebody in Dane County."

- "You go out of your way — Even today you go out of your way as much as you can just to ignore it — to have tunnel vision and say we can't acknowledge it, . . . Why do you refuse to do it."

- "Why don't you just be honest and say: You know what, we don't care folks, we don't care. These

611

people matter. They're the club. They're powerful. They matter. Adam Raisbeck doesn't count. Why don't you be — Why don't just you [sic] be honest about it, damn it?"

- "And I bet if you took a poll in here, everybody would say this is a kangaroo court."

- "What I'm saying is, though, that basically it comes down to it — This is — I guess I'm more accusing you of a lack of nerve. So I guess if it sounds better, it's better. But I'm accusing you of a lack of nerve. I'm accusing you of the lack of nerve to basically have the courage to come to terms with what has happened and to even enforce your own orders."

¶ 63. At the evidentiary hearing Judge Pekowsky testified that these statements were not true. DDA Schwaemle also testified the statements Attorney Sommers made were false and an insult to Judge Pekowsky. Attorney Sommers did not appear at the evidentiary hearing. In his written materials he asserts he made the statements in "good faith" but the record is devoid of credible evidence to support Attorney Sommers' extraordinarily disrespectful challenges to Judge Pekowsky's credibility.

■

¶ 64. We agree with the referee's conclusion that on May 24, 2004, Attorney Sommers made statements to Judge Pekowsky known to be false or with reckless disregard as to their truth or falsity concerning the integrity of a judge, in violation of SCR 20:8.2(a).

¶ 65. Next, we consider whether Attorney Sommers violated the Attorney's Oath contrary to SCR 20:8.4(g). Supreme court rule 20:8.4(g) provides that it is misconduct to violate the Attorney's Oath, which states in pertinent part as follows:

> I will maintain the respect due to courts of justice and judicial officers;
>
> . . .
>
> I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; . . . .

*See* SCR 40.15. The Rules of Professional Conduct for Attorneys, SCR Chapter 20, contains a preamble of a lawyer's responsibilities. The initial paragraph of that preamble reads in part as follows: "A lawyer . . . is . . . an officer of the legal system and a public citizen having special responsibility for the quality of justice." The preamble further states that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." Similarly, in *State v. Eisenberg,* 48 Wis. 2d 364, 380–81, 180 N.W.2d 529 (1970), this court said:

> License to practice law in this state is granted on implied understanding that an attorney shall at all times demean himself in proper manner and refrain from such practices which bring disrepute upon himself, the profession and the courts. This implied understanding is also affirmed by the oath taken by the attorney on admission to practice.

*See also State v. Postorino,* 53 Wis. 2d 412, 419, 193 N.W.2d 1 (1972) ("[a] lawyer is a professional man 24 hours a day, not eight hours, five days a week.")

██

¶ 66. Attorney Sommers' outburst greatly demeaned the dignity of the court and fell far short of his ethical obligation to maintain the respect due to courts and judicial officers. We hold that the record evidence

613

supports the referee's conclusion that Attorney Sommers' statements and conduct at the May 24, 2004 hearing before Judge Pekowsky violated the Attorney's Oath, contrary to SCR 20:8.4(g).

*Count Three*

¶ 67. We turn to the third charge against Attorney Sommers, which relates to allegations that Attorney Sommers made inappropriate extrajudicial statements and improperly contributed to pretrial publicity.

¶ 68. Supreme court rule 20:3.6 is entitled "Trial publicity" and is intended to strike a balance between the important right to a fair trial and the important right of free expression. As the Comment to the ABA Model Rule on trial publicity states, "[p]reserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved." Model Rules of Prof'l Conduct R. 3.6 cmt. (2010). The rule is quite explicit in specifying types of information a lawyer may or may not disclose at various stages of litigation. For example, at the investigation stage, a lawyer may state "without elaboration" the general scope of the investigation and a description of the physical evidence seized; after the complaint is filed and prior to trial, a lawyer is prohibited from making a statement relating to the character, reputation or prior criminal record of the accused but is not prohibited from stating the accused's name, age, residence, occupation, and family status. The rule precludes a lawyer from disseminating information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial. SCR 20:3.6(b)(5). And, the Comment to the Model Rule

notes that there are certain subjects that are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a criminal matter or any other proceeding that could result in incarceration. These subjects include "the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness; . . . ." Model Rules of Prof'l Conduct R. 3.6 cmt. (2010). Criminal jury trials are most sensitive to extrajudicial speech. To this end, SCR 20:3.6(a) provided that:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

¶ 69. On October 4, 2002, while the *Raisbeck* matter was still in litigation, Attorney Sommers provided an interview to the *Isthmus* "Daily Page" regarding ADA Humphrey's "unethical conduct" during the *Raisbeck* case. Attorney Sommers informed the *Isthmus* that ADA Humphrey "frustrated his efforts to obtain exculpatory evidence, primarily photos taken at the scene," and accused ADA Humphrey of ongoing misrepresentations "he believes [are] intended to wear the defense down." The article contained information concerning key expert testimony emphasizing that "[e]stimates by prosecution experts that Raisbeck was driving as fast as 88 mph are based on the assumption that marks left on the road were caused by his car

careening out of control. The defense believes they are actually brake marks, making these estimates unreliable."

¶ 70. On February, 15, 2005, while the *Raisbeck* case was still pending, two individuals disseminated separate, but fundamentally identical, e-mail messages from an internet site, justicedanecountystyle@yahoo.com, to several Dane County attorneys, attaching documents entitled "The Raisbeck Case Made Simple," "Justice Dane County Style I," "Justice Dane County Style II," "Justice Dane County Style III," and "Justice Dane County Style V," which referenced witness statements, the results of expert speed calculations, and the character and credibility of the district attorney's office. The "Raisbeck Case Made Simple" contained speed estimates from the State's expert witness.

¶ 71. The web site www.justicedanecostyle.com contained various articles and factual timelines regarding the *Raisbeck* trial regarding "Withholding photographic evidence," "Judge Higginbotham's revision of the record," "District Attorney's office use of a fraudulent warrant to hold a reluctant witness in the Dane County Jail," "Dane County Court's attitudes toward prosecutorial misconduct/outrageous government conduct," "Other cases involving Assistant District Attorney Paul Humphrey," "Expert Testimony - Krenz (The DA's Office 2nd 'Expert')," and "Facts behind Channel 27's Coverage Correction (Speed Facts)."

¶ 72. On March 18, 2005, the *Isthmus* reported that the *Raisbeck* case, then set for trial in April 2005, had its own web site, www.justicedanecostyle.com, which "offers vast amounts of information in support of the defense's contentions." The *Isthmus* article stated

616

that, "Sommers says he's not the site's architect but concedes he's 'assisted and cooperated and provided information.' "

¶ 73. On April 8, 2005, Attorney Sommers deposed Robert Krenz, one of the State's experts. Between April 8, 2005, and the date the trial commenced on April 18, 2005, the transcript of Mr. Krenz's deposition was posted to the Justice Dane County Style web site.

¶ 74. On April 15, 2005, an e-mail was sent from Truth4U@justicedanecostyle.com advising the recipients to review transcript pages purporting to provide evidence that the district attorney's office committed perjury and knew from the beginning of the *Raisbeck* case that the evidence utilized to bind Raisbeck over for trial was invalid.

¶ 75. Count Three of the OLR's complaint alleged:

By drafting documents and providing information for public dissemination via e-mail, the Internet, and the *Isthmus* regarding the expected testimony of witnesses, the results of examinations, and the character and credibility of the District Attorney's office in the upcoming *Raisbeck* case, [Attorney] Sommers made extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication when he knew or reasonably should have known that the statements would have a substantial likelihood of materially prejudicing an adjudicative proceeding, in violation of SCR 20:3.6.[17]

---

[17] SCR 20:3.6 stated, in pertinent part: Trial publicity.

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer

The referee concluded that the facts of record supported the conclusion that Attorney Sommers violated SCR 20:3.6.

¶ 76. Attorney Sommers appeals. Attorney Sommers focuses his attention on paragraphs 51–53 of the OLR complaint which alleged that Attorney Sommers was involved with the distribution of fliers to the public prior to the scheduled *Raisbeck* trial in May of 2004, including fliers allegedly distributed in a juror parking lot. Attorney Sommers emphasizes that the referee did not address these specific factual allegations in his report and asserts that OLR Director Keith Sellen acknowledged in a deposition that it was "a mistake" for

knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in deprivation of liberty, and the statement relates to:

(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

(2) in a criminal case or proceeding that could result in deprivation of liberty, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

(4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in deprivation of liberty;

(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; . . . .

618

these paragraphs to have been included in the complaint because both the District Attorney's office and Mr. Sellen "had concluded that Atty. Sommers had nothing to do with the purported leafleting." Attorney Sommers then characterizes these three paragraphs as "the most critical factual assertions relating to Count Three."

¶ 77. We do not agree with Attorney Sommers' characterization of these three paragraphs as the "most critical factual assertions" in Count Three. The allegations in Count Three of the complaint and the referee's other factual findings with regard to Count Three are extensive. These include Attorney Sommers' interviews with *Isthmus* and his admitted involvement with the web site that made public highly detailed information that would not be admissible at trial. For example, the web site included expert witness deposition testimony despite the existence of a sequestration order. OLR contends Attorney Sommers knew much of this information would not be admitted at trial, such as his allegations of prosecutorial misconduct during the *Raisbeck* case.

██

¶ 78. Attorney Sommers has every right to publicly criticize the district attorney's office. However, engaging in pretrial publicity consisting of speculation, unproven allegations, and release of inadmissible evidence in a manner likely to prejudice the integrity of the judicial process may violate SCR 20:3.6.[18] We conclude

[18] Attorney Sommers points out that SCR 20:3.6(c)(6) provides that an attorney may warn the public of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest. He suggests that his pretrial publicity qualifies for this exception. We are not persuaded.

that the record supports the referee's conclusion that Attorney Sommers' actions during the *Raisbeck* matter violated SCR 20:3.6.

¶ 79. We turn to the question of appropriate discipline. The OLR seeks a 60–day suspension. The referee recommended a 30–day suspension. In making our determination we are free to impose discipline more or less severe than that recommended by the referee. *In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894; *In re Disciplinary Proceedings Against Elliott,* 133 Wis. 2d 110, ¶ 114, 394 N.W.2d 313 (1986).

¶ 80. We consider the seriousness of the misconduct, the need to protect the public, the courts, and the legal system from repetition of misconduct, the need to impress upon the attorney the seriousness of the misconduct, and the need to deter other attorneys from engaging in similar misconduct. We are guided by prior case law, aggravating and mitigating factors, and by the ABA Standards for Imposing Lawyer Sanctions. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, 279 Wis. 2d 583, 694 N.W.2d 910. Ultimately, each disciplinary case turns on its specific facts. *See, e.g., In re Disciplinary Proceedings Against O'Byrne,* 2002 WI 123, 257 Wis. 2d 8, 653 N.W.2d 111.

¶ 81. Attorney Sommers has repeatedly alleged that ADA Humphrey and his colleagues at the Dane County District Attorney's office concocted evidence against Raisbeck or knowingly failed to correct mistaken conclusions about evidence because those incorrect conclusions were advantageous to the prosecution. He has asserted that the OLR and its staff pursued the dual prosecution of ADA Humphrey and Attorney Som-

mers in bad faith. He has asserted that various judges and the courts have aided and abetted prosecutorial misconduct by turning a blind eye to it. The crux of Attorney Sommers' argument on appeal is that the circumstances in which he found himself in the *Raisbeck* case justify—or at least excuse—his actions.

¶ 82. The referee was mindful of Attorney Sommers' perspective when he considered his recommendation for discipline. He perceived both attorneys as at fault in the *Raisbeck* case, stating:

> There is no doubt that Sommers was frustrated with Humphrey's conduct in the Raisbeck case. Sommers, however, was aggressive in his defense of Raisbeck. As the Deputy District Attorney [Schwaemle] indicated, Humphrey was probably aggravated by Sommers and responded in inappropriate ways.
>
> Sommers appeared to have been too emotionally involved in the Raisbeck case. While his client was found not guilty, his conduct raised serious ethical issues. Sommers was also emotionally involved in his defense of this matter.

¶ 83. Attorney Sommers' conduct during the *Raisbeck* matter was improper and violated the rules of professional conduct. Attorney Sommers' outburst before Judge Pekowsky was outrageously rude and his extrajudicial statements and participation in pretrial publicity contravened SCR 20:3.6.

¶ 84. Typically, this court has adhered to a policy of imposing a minimum license suspension of 60 days. *See In re Disciplinary Proceedings Against Osicka,* 2009 WI 38, ¶ 38, 317 Wis. 2d 135, 765 N.W.2d 775; *In re Disciplinary Proceedings Against Grady,* 188 Wis. 2d 98, 108–09, 523 N.W.2d 564 (1994); *In re Disciplinary*

*Proceedings Against Schnitzler,* 140 Wis. 2d 574, 577–78, 412 N.W.2d 124 (1987).

¶ 85. However, we agree with the referee's implicit conclusion that a 60–day suspension, which would significantly disrupt Attorney Sommers' practice of law and ability to earn a livelihood, is not warranted. Attorney Sommers was exonerated on the first count of the complaint, and we agree with the referee's conclusion that the conduct of ADA Humphrey is a basis for limited mitigation of a sanction. However, a public reprimand is insufficient discipline for Attorney Sommers' misconduct, particularly his disruptive outburst in court before Judge Pekowsky. We have concluded that we will deviate from our usual policy of requiring a minimum suspension of 60 days, and we hereby impose a 30–day suspension on Attorney Sommers' license to practice law. This is an unusual case that calls for an unusual result. We caution Attorney Sommers that to the extent he might object to our deviation from policy, the court, after extensive deliberation, concluded that the misconduct in this matter required a suspension. Our choice was between a 60–day suspension and a 30–day suspension.

¶ 86. We turn to the question of the costs to be imposed in this proceeding. This court's general practice is to assess the full costs of a disciplinary proceeding against a respondent. SCR 22.24(1m).[19] Under SCR

---

[19] SCR 22.24(1m) reads, in part:

The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent.

22.24(1m), to award less than full costs, the court must find extraordinary circumstances.

¶ 87. Attorney Sommers challenged the initial costs of this proceeding by letter dated November 16, 2009. The referee's report includes a general suggestion that Attorney Sommers should pay for two-thirds of the costs of this proceeding. The supplemental statement of costs filed November 17, 2010, reflects costs on that date were $94,612.56, a very expensive disciplinary proceeding. In his appellate brief, Attorney Sommers commented that:

> The burden of paying for the aforementioned evidentiary hearings and related submissions, in all probability, will fall upon Atty. Sommers. If this court accepts Ref. Hack's position, Atty. Sommers will be responsible for roughly 2/3 of Ref. Hack's and OLR's time and costs. If this court accepts OLR's position, Atty. Sommers will be responsible for 100% of Ref. Hack's and OLR's time and costs for meaningless evidentiary hearings and briefs. Either way, Atty. Sommers, due to Ref. Hack's actions, will in all likelihood be stuck with paying thousands and thousands and thousands of dollars.

¶ 88. This court carefully considered the costs and the referee's suggestion that a reduction in costs might be appropriate. Attorney Sommers litigated this case vigorously, as is his right. On one hand, Attorney Sommers was exonerated on Count One of the complaint, there were certain filing anomalies that were not entirely Attorney Sommers' fault, and the OLR did not wholly prevail on its interlocutory appeal.

¶ 89. On the other hand, Attorney Sommers opted to pursue very extensive discovery of matters not directly related to defending the disciplinary allegations

against him. It is disingenuous for Attorney Sommers to attempt to shift the blame for the high costs of this litigation onto Referee Hack. Both referees and this court repeatedly signaled to Attorney Sommers that this case was not the proper forum for him to try to prove misconduct or malfeasance by ADA Humphrey, the district attorney's office, the OLR, or any of the other persons accused by Attorney Sommers. Attorney Sommers was advised by this court on February 12, 2007, that he would be able to seek redress against the OLR after the conclusion of this litigation. In a letter to Chief Justice Abrahamson dated August 31, 2007, Attorney Sommers conceded that Referee Hanson had "emphatically held that no evidence will be permitted . . . pertaining to allegations against OLR (or the Dane County DA's Office)." Referee Hack formally denied Attorney Sommers' counterclaim on February 29, 2008. Attorney Sommers thus made an informed tactical decision to continue to try to prove misconduct by others in a disciplinary proceeding that was intended to focus on his own alleged misconduct. This decision contributed greatly to the length and the cost of this proceeding. However, mindful that Attorney Sommers did prevail on one count and was required to litigate the OLR's interlocutory appeal in this court, we conclude that Attorney Sommers should be required to pay one-half of the full costs of the proceeding, which totaled $94,612.56 as of November 17, 2010.[20]

¶ 90. IT IS ORDERED that the license of Joseph L. Sommers to practice law in Wisconsin is suspended for a period of 30 days, effective May 7, 2012.

---

[20] An objection to the specific amount of costs is not presently before this court. *See* SCR 22.24(2).

¶ 91. IT IS FURTHER ORDERED that Joseph L. Sommers shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 92. IT IS FURTHER ORDERED that within 60 days of the date of this order, Joseph L. Sommers shall pay to the Office of Lawyer Regulation the imposed costs of this proceeding. If the imposed costs are not paid within the time specified and Joseph L. Sommers has not entered into a payment plan approved by the Office of Lawyer Regulation, then the Office of Lawyer Regulation is authorized to move this court for a further suspension of the license of Joseph L. Sommers to practice law in Wisconsin.

¶ 93. ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN, J.J., did not participate.