**2025 WI 40**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
JOHN P. BURAN, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant-Appellant,*

*v.*

JOHN P. BURAN,
*Respondent-Respondent.*

No. 2023AP1760-D

Decided August 14, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM.[1] In this disciplinary proceeding, there is no dispute that Attorney John P. Buran committed professional misconduct by forging the name of a former employee of his law firm as a witness to nine wills and then submitting six of those wills to probate, as alleged in the three counts of the complaint. The dispute in this matter centers on the appropriate level of discipline to be imposed. The Office of Lawyer Regulation (OLR) has appealed Referee Sue E. Bischel's recommendation that we suspend Attorney John P. Buran's license to practice law in Wisconsin for 18 months as discipline for his professional misconduct.

---

[1] All work on this opinion was completed on or before July 31, 2025, at a time when Justice Ann Walsh Bradley was a member of the court.

Per Curiam

¶2     The OLR seeks the revocation of Attorney Buran's license to practice law in Wisconsin, which we find to be unsupported by our prior disciplinary decisions. We conclude that the particular facts of this case, which fall short of warranting a revocation of Attorney Buran's license, are nonetheless serious enough to require a suspension of 30 months.

¶3     Attorney Buran was admitted to the practice of law in September 1990. He has operated his own legal practice in Manitowoc. He has not previously been the subject of professional discipline.

¶4     The OLR's complaint in this matter alleged three counts of professional misconduct. Attorney Buran filed an answer in which he admitted almost all of the substantive factual allegations of the complaint, but he did not admit the complaint's legal allegations that his conduct had constituted violations of the applicable Rules of Professional Responsibility. The OLR subsequently filed a motion for summary judgment, which it supported by affidavits. Attorney Buran did not oppose the motion.

¶5     Given the factual admissions in Attorney Buran's answer and his decision not to oppose the OLR's summary judgment motion, the material facts in this matter are undisputed. Based on those undisputed facts, the referee granted summary judgment to the OLR on the three counts alleged in the complaint.

¶6     The undisputed facts in this matter, as admitted by Attorney Buran and found by the referee, and the conclusions of law that result from those facts are as follows. At one point in time, Attorney Buran's law firm employed Penny Fabian as a legal assistant. As part of her employment, Ms. Fabian would affix her signature as a witness to documents prepared by Attorney Buran. Ms. Fabian left Attorney Buran's employment at some point in 2007.[2]

---

[2] In his answer to the OLR's complaint, Attorney Buran stated that he was without information sufficient to answer the OLR's allegation regarding the end date of Ms. Fabian's employment, which constituted a denial of the allegation. However, in support of its summary judgment motion, the OLR submitted an affidavit from Ms. Fabian, in which she averred that her employment with the Buran Law Offices ended at some point in 2007. Attorney Buran did not oppose the OLR's summary judgment motion and did not submit any evidence to contest Ms. Fabian's averment. Consequently, there can be no genuine issue about that

Per Curiam

¶7    In 2016 and again in 2021, Attorney Buran drafted wills for client A.K. On both wills, Attorney Buran forged Ms. Fabian's signature as a witness to A.K.'s execution of the will. A.K. died in August 2021. The forging of these signatures formed the basis for Count One of the complaint.

¶8    The referee concluded that Attorney Buran's forging of Ms. Fabian's signature on both of these wills constituted a violation of Supreme Court Rule (SCR) 20:8.4(c).[3]

¶9    Counts Two and Three of the complaint related to a number of other wills on which Attorney Buran forged Ms. Fabian's signature. Specifically, the complaint alleged, and the referee found, that between September 2008 and August 2020, Attorney Buran forged Ms. Fabian's signature as a witness to seven additional wills. Attorney Buran filed six of those wills for probate in Manitowoc County circuit court probate proceedings. Attorney Buran did not disclose to the circuit court that any of those six wills on which he had forged a witness signature might be defective or invalid. The OLR did not allege that any of those wills were rejected or even the subject of a dispute. It did identify the six probate

---

fact because it was not disputed with evidence to the contrary or even challenged. *See* Wis. Stat. § 802.08(3) ("When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial."); *Metropolitan Ventures, LLC v. GEA Associates*, 2006 WI 71, ¶21, 291 Wis. 2d 393, 717 N.W.2d 58 ("'An issue of fact is genuine if a reasonable jury could find for the nonmoving party.'" (citation omitted)). The referee indicated that she found the end date of Ms. Fabian's employment to be irrelevant to the operative allegation that Attorney Buran forged Ms. Fabian's signature on a series of wills without her knowledge or consent. While we agree that an attorney forging someone else's signature is improper whether or not that person is an employee of the attorney at the time, since Attorney Buran did not rebut Ms. Fabian's affidavit, we will consider that fact as undisputed for purposes of this opinion.

[3] Supreme Court Rule 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

proceedings in which the wills with the forged witness signatures were filed.

¶10    Based on these facts, the referee again determined that Attorney Buran's forging of Ms. Fabian's signature on the seven additional wills constituted a violation of SCR 20:8.4(c). In addition, the referee concluded that by filing for probate in circuit court proceedings six wills on which he had forged a witness signature without informing the court of that fact, Attorney Buran had also violated SCR 20:3.3(a)(1).[4]

¶11    After the referee granted the OLR's summary judgment motion regarding the presence of violations by Attorney Buran, she asked the parties to submit memoranda of law concerning the proper level of discipline for Attorney Buran's professional misconduct. Both parties submitted the requested memoranda. Neither party asked for an evidentiary hearing at which to present testimony or documentary evidence regarding the appropriate level of discipline. In his appellate brief, Attorney Buran indicates that he was unaware he could request an evidentiary hearing and states that he simply accepted the fact that the referee wanted only legal memoranda on the issue of discipline.

¶12    The referee ultimately recommended that we suspend Attorney Buran's license to practice law in Wisconsin for a period of 18 months. The referee considered the factors which this court has identified as applicable to a determination of the appropriate level of discipline: (1) the seriousness, nature, and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from a repetition of the attorney's misconduct; (3) the need to impress upon the respondent attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct. *See In re Disciplinary Proceedings Against Scanlan*, 2006 WI 38, ¶72, 290 Wis. 2d 30, 712 N.W.2d 877 (citation omitted).

¶13    The referee stated that the misconduct at issue here, forging witness signatures on a substantial number of wills and presenting many

---

[4] Supreme Court Rule 20:3.3(a)(1) states that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

of them to probate courts, was serious. The seriousness was enhanced by the fact that the misconduct stretched over a period of 13 years. The referee acknowledged that Attorney Buran's filing of the wills containing a forged witness signature opened them up to potential challenges. The referee further noted that Attorney Buran conceded the seriousness of his misconduct. On the other hand, the referee pointed to Attorney Buran's assertion that the testators' signatures had not been forged and that the wills accurately reflected the intent of the testators. The referee noted that neither party had squarely addressed the other three factors, but had included some discussion of them while discussing the American Bar Association Standards for Imposing Lawyer Sanctions (the ABA Standards) and case law from both Wisconsin and other states.

¶14    The referee briefly discussed the ABA standards. She noted that those standards deem any dishonest conduct to seriously reflect adversely on an attorney's fitness to practice law. Those standards draw a distinction between intentionally deceiving a court by submitting false documents, in which case revocation is recommended, versus knowingly submitting false statements or documents and taking no remedial action, in which case a suspension is recommended. The referee noted that in his sanction memorandum, Attorney Buran stated that while he admitted that he had knowingly submitted false statements to a court, he had not intended to deceive the court, but his intent in filing the flawed wills was merely "to see the terms of the will carried out." The referee stated that there was no evidence in the record to refute these statements by Attorney Buran. She noted that ordinarily an evidentiary hearing is helpful in evaluating and appreciating the seriousness of the offense and in gauging the sincerity of a respondent's expressions of remorse, but that there was no evidentiary hearing in this matter, given the summary judgment as to the presence of ethical violations.

¶15    The OLR cited a number of prior disciplinary decisions, both issued by this court and by courts in other states, in support of its argument in favor of revocation. The referee generally distinguished on their facts the prior Wisconsin cases and the foreign decisions in which the respondent lawyer's license had been revoked. She concluded that the most analogous case to the present one was *In re Disciplinary Proceedings Against Acker*, 2007 WI 117, 305 Wis. 2d 11, 738 N.W.2d 554. In that case, Attorney Acker falsified closing certificates in several estate proceedings and lied to the probate courts about the status of the estates. Attorney Acker had no prior disciplinary history. The court accepted the referee's findings that she had

not acted out of a selfish motive, had made full disclosure to the OLR during its investigation, and had exhibited both good character and remorse. Under these facts, this court suspended Attorney Acker's license to practice law for a period of 18 months.

¶16 Referee Bischel considered both aggravating and mitigating factors. On the aggravating side of the ledger, the referee stated that Attorney Buran had engaged in multiple offenses, that his actions demonstrated a pattern of misconduct, and that he had a substantial amount of experience in the law at the time of his misconduct. On the mitigating side, the referee pointed to the fact that Attorney Buran had no prior history of discipline and that there was an absence of a dishonest or selfish motive. The referee also said that the OLR had not disputed Attorney Buran's claim that he had made a good faith effort to rectify the consequences of his action with one client. The referee pointed out that Attorney Buran had not opposed the summary judgment motion and that he had expressed remorse for his conduct at several points in his sanction brief. Again, the referee noted that she had not had an opportunity to hear Attorney Buran's expressions of remorse during an evidentiary hearing, but she said that, in the absence of evidence to the contrary, she found that his expressed remorse was genuine.

¶17 Ultimately, while quoting this court's statement that "each disciplinary case turns on its specific facts," *In re Disciplinary Proceedings Against Sommers*, 2012 WI 33, ¶80, 339 Wis. 2d 580, 811 N.W.2d 387, the referee concluded that the OLR's requested sanction of revocation was too harsh and recommended that the court suspend Attorney Buran's license to practice law in this state for a period of 18 months. She found analogous the misconduct committed in *Acker*, for which this court imposed an 18-month suspension. Moreover, she concluded that this level of discipline was, in light of the aggravating and mitigating factors, sufficient to protect the public and the courts from a repetition of Attorney Buran's misconduct, to impress upon him the seriousness of his actions, and to deter other attorneys from committing similar misconduct.

¶18 The OLR appealed only the referee's recommendation as to the appropriate level of discipline. Its appellate brief abandoned the various disciplinary decisions from Wisconsin and other states that it cited to the referee in its sanction memorandum. Before this court, the OLR relies primarily on our decision in *In re Disciplinary Proceedings Against Strouse*, 2024 WI 10, 410 Wis. 2d 402, 2 N.W.3d 739, and in passing on *In re*

*Disciplinary Proceedings Against Petros*, 2021 WI 55, 397 Wis. 2d 447, 960 N.W.2d 426. In both of those cases, we revoked the licenses of the respondent attorneys for conduct that included dishonesty. The OLR's appellate brief, however, does not discuss in detail the full panoply of misconduct that led to the revocation of the licenses of those two attorneys, nor does it compare their full misconduct to Attorney Buran's misconduct. It simply points to our statements in those opinions that revocation is "reserved for the most egregious cases," *Strouse*, 410 Wis. 2d 402, ¶68 (citing *In re Disciplinary Proceedings Against Cooper*, 2013 WI 97, ¶34, 351 Wis. 2d 350, 839 N.W.2d 857), and that "our profession has no place for persons who cannot be counted on to follow the basic standards and procedures set forth in our ethical rules." *Id.*, ¶68 (quoting *Petros*, 397 Wis. 2d 447, ¶29). The OLR does assert that Attorney Buran's misconduct "mirrors Strouse's" because they each forged signatures on documents filed with courts, and that Attorney Buran's misconduct in forging witness signatures was "like" the conduct of Attorney Petros, who made misrepresentations to tribunals. Asserting that Attorney Buran's submission of wills to probate courts while knowing that they contained forged witness signatures confirms that he "cannot be counted on to follow the basic standards and procedures in [this court's] ethical rules," *Petros*, 397 Wis. 2d 447, ¶29, the OLR argues that any level of discipline short of revocation would "unduly depreciate the gravity" of his misconduct. *Strouse*, 410 Wis. 2d 402, ¶68.

¶19     The OLR also relies on the ABA standards and the distinction it draws between intentional conduct involving dishonesty, fraud, deceit, or misrepresentation, including intentionally deceiving a court, and mere knowledge that a document or statement submitted to a court is false. It argues that Attorney Buran not only knew that he had forged his former assistant's signature as a witness on the wills, but that since he filed those wills with that knowledge, he therefore must have intended to deceive the court, which requires the revocation of his license.

¶20     The OLR emphasizes a number of aggravating factors that are listed in the ABA standards. In addition to the three aggravating factors identified by the referee (multiple offenses, pattern of misconduct, and substantial legal experience), the OLR also claims that the vulnerability of the victims of Attorney Buran's misconduct constitutes an aggravating factor. It calls the clients of Attorney Buran a "particularly vulnerable class" because they sought Attorney Buran's representation to protect and pass on their estates, but Attorney Buran put their wishes at risk because the wills could be subject to challenge.

¶21 The OLR criticizes the referee's recommendation as being premised on clearly erroneous findings of fact. It notes that no evidentiary hearing was conducted so no admissible evidence was presented, no cross-examination occurred regarding Attorney Buran's assertions, and the referee was unable to make credibility determinations regarding those statements. The OLR asserts that a respondent attorney bears the burden of establishing mitigating factors. *See In re Disciplinary Proceedings Against Kovac*, 2020 WI 47, ¶53, 391 Wis. 2d 719, 943 N.W.2d 504 ("a party's own say-so is not enough to support mitigation of the sanction in attorney disciplinary cases"); *In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, ¶¶16-17, 391 Wis. 2d 196, 942 N.W.2d 302 (a respondent attorney's failure to present evidence "cuts against an argument of mitigation"). Given the lack of any evidence submitted at a hearing or even by affidavit, the OLR asserts that Attorney Buran failed to meet his burden of proof on claims of mitigation and that the referee erred in finding the presence of certain mitigating factors, namely, a lack of intent to deceive, an attempt to rectify his misconduct with one client, and remorse for his misconduct. The OLR argues to the contrary that Attorney Buran's pattern of committing the same misconduct over a long period of time demonstrates that he lacked remorse for his misconduct and that he intended to deceive the probate courts to which he submitted those flawed wills. It urges the court to impose the harshest level of discipline available—the revocation of Attorney Buran's license to practice law in this state.

¶22 Attorney Buran's appellate brief acknowledges the seriousness of his misconduct, but argues that the referee's discipline recommendation is consistent with the result in *Acker* and is appropriate under the facts of this case. Attorney Buran also expresses confusion about the OLR's argument that, if he wanted the referee to consider mitigating factors, it was his responsibility to demand an evidentiary hearing and to present testimony, subject to cross-examination, at such a hearing. He indicates that since the referee called for the submission of legal memoranda regarding the level of discipline following her summary judgment order, he simply believed that was the appropriate procedure and that he was unaware that he could ask for an evidentiary hearing.

¶23 When we review a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the

particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶24 In this case, there is no dispute about the facts that relate to Attorney Buran's conduct in forging witness signatures on wills and then subsequently filing those wills in probate proceedings following the death of the testator. Attorney Buran did not oppose the OLR's summary judgment motion. Consequently, we adopt the factual findings of the referee regarding Attorney Buran's misconduct. We also agree with the referee that those facts provide clear and convincing proof that Attorney Buran committed the three rule violations alleged in the OLR's complaint.

¶25 We now turn to the subject of the appeal, which is the appropriate level of discipline in this proceeding. The OLR challenges the referee's findings/statements regarding Attorney Buran's lack of intent to deceive and his remorse. We acknowledge that the OLR raises legitimate issues regarding a referee's statements concerning mitigating/aggravating factors and the proper level of discipline. We need not address those issues here, however, to determine the appropriate level of discipline that should be imposed on Attorney Buran for his professional misconduct. We save for another day the issues regarding what a referee may utilize for finding the presence of aggravating and mitigating factors.

¶26 In particular, the OLR criticizes the referee for finding, based on statements by Attorney Buran in his sanction memorandum, that he was remorseful for his misconduct and that he attempted to rectify the consequences of his misconduct with one client. We need not address these arguments because we are able to reach a decision on the appropriate level of discipline without relying on any finding that Attorney Buran expressed true remorse for his misconduct. It is clear from the record of this case that Attorney Buran accepted responsibility for his misconduct. His answer admitted all of the material factual allegations of the OLR's complaint. When the OLR then moved for summary judgment on the basis that those facts demonstrated the ethical violations alleged, Attorney Buran did not oppose the OLR's motion. He acknowledged, both before the referee and in his appellate brief, that he had committed misconduct and that it was serious. He did not dispute his actions and did not attempt to evade responsibility for them. Whether one could further state that he also was remorseful for his misconduct (that he felt genuine guilt and regret for what

he had done) does not change the calculus enough in this instance to require a different level of discipline.

¶27   The OLR seeks the ultimate sanction that this court can impose. To be blunt, this is not a revocation case.[5] It is a case that calls for a substantial suspension. Attorney Buran's misconduct is extremely serious. Rather than take the necessary step of finding the required number of witnesses to sign certain of his clients' wills, he forged a signature of a witness to make it appear that the legal requirements for witnessing a will had been satisfied. He then compounded his misconduct by filing those wills in the probate courts of this state. Moreover, this was not an isolated course of conduct; he did this multiple times over a period of at least 13 years. The number of times this misconduct occurred, the repeated pattern of this misconduct, the length of time over which this misconduct occurred, and the undermining of the judicial probate process all constitute aggravating factors that call for a substantial suspension to impress the seriousness of his misconduct on Attorney Buran and to deter other attorneys in this state from taking similar actions.

¶28   The *Strouse* decision, on which the OLR relies for its revocation argument in this court, is distinguishable on its facts. That proceeding involved an attorney who engaged in many kinds of misconduct and had no compunction with openly lying to others, including to judges. First, Attorney Strouse stole the notary seal of another attorney (or at least affirmatively hid the fact that he possessed it) and then repeatedly used it without the owner attorney's knowledge or consent. When the other attorney questioned whether he had the notary seal, Attorney Strouse brazenly lied on multiple occasions that he did not have it in his possession. He continued to use the seal to fraudulently notarize documents that he immediately filed with a bankruptcy court. When two judges of that court questioned him, he lied to them about an arrangement whereby the other attorney regularly came to his office to notarize

---

[5] To the extent that the OLR points to the ABA standards, we note that those standards are one factor that referees and this court consider in determining the appropriate level of discipline. They are not determinative of the appropriate sanction. In this case, the nature of the misconduct and our prior precedents call for a level of discipline that is substantial, but less than the ultimate sanction of revocation.

documents, and he falsely blamed the improper notary signatures and use of the notary seal on his staff. Importantly, that misconduct was just one part of Attorney Strouse's misconduct. In a separate matter, he also destroyed a client's discrimination claim by voluntarily dismissing it, without the client's knowledge or consent, after the statute of limitations had expired. In addition, he essentially used a suspended and subsequently revoked attorney to perform legal services for his unsuspecting clients. In all, Attorney Strouse was found to have committed nine counts of misconduct involving multiple representations. His conduct demonstrated that he had little regard for the truth generally or for the ethical rules of the legal profession. His misconduct was pervasive in his practice; it was not limited to one type. Importantly, Attorney Strouse had an extensive history of prior discipline, which included three public reprimands and a 60-day suspension.

¶29    Attorney Buran's history and his misconduct do not rise to the level of Attorney Strouse's history and misconduct. The extensive disciplinary history and the broad range of Attorney Strouse's misconduct gave the impression that he was wholly incapable of conforming his conduct to the Rules of Professional Conduct and could not be trusted as an officer of the court. There is not a similar impression from Attorney Buran's history and his misconduct at issue here. Attorney Buran has no prior disciplinary history. He has practiced for 35 years in a number of types of matters. There is no evidence in this record that Attorney Buran violated his ethical obligations during that lengthy career other than by the one type of misconduct that is at issue in this case. Unlike Attorney Strouse, the undisputed facts here do not create the impression that Attorney Buran is the type of person who can never be trusted in a courtroom under any circumstances. He engaged in a particular type of misconduct and did so repeatedly over an extended period of time, which is serious and calls for a substantial suspension, but it is inaccurate to equate Attorney Strouse's history and misconduct with Attorney Buran's history and misconduct.

¶30    We agree with the referee that the precedent most analogous to this case is our decision in *Acker*.[6] In that case, Attorney Acker followed a general pattern in seven separate estates of making affirmative false

---

[6] We also agree with the referee that the other precedents cited in the OLR's sanction memorandum submitted to the referee are distinguishable on their facts.

statements to probate courts and then filing falsified closing certificates and other documents. Her misconduct, like Attorney Buran's, was found generally to have violated SCR 20:8.4(c) and 20:3.3(a)(1).

¶31    There are differences, however, that call for a more severe level of discipline here than the 18-month suspension we imposed on Attorney Acker. First, Attorney Acker's misconduct occurred in the conduct of probating valid wills while Attorney Buran's misconduct potentially affected the validity of the wills and therefore of the probate proceedings. Second, while the number of probate proceedings affected was similar in the two cases, Attorney Buran's misconduct extended over a much greater period of time, at least 13 years, which calls for a stronger level of discipline.

¶32    Ultimately, we conclude that a 30-month suspension of Attorney Buran's license is the appropriate level of discipline under the particular facts of this case and given our prior decisions. A suspension of two and one-half years is sufficient to impress upon Attorney Buran the unquestionable seriousness of his misconduct. It is also a warning to other attorneys who might be tempted to follow the same short-cut when faced with the need to locate witnesses for the execution of a will that such misconduct will have grave consequences for their privilege of practicing law in this state and for their livelihood.

¶33    Finally, we turn to the question of costs. The referee recommended that the court impose the full costs of the proceeding on Attorney Buran, and he has not challenged the costs submitted by the OLR, either for the proceedings before the referee or for the appeal before this court. There is nothing in the record of this proceeding that calls for a deviation from this court's general practice of imposing the full costs on a respondent attorney who is found to have engaged in professional misconduct. *See* SCR 22.24(m). Consequently, we will require Attorney Buran to pay the full costs of this proceeding, which were $9,102.97, as of March 7, 2025.

¶34    IT IS ORDERED that the license of Attorney John P. Buran to practice law in Wisconsin is suspended for a period of 30 months, effective as of the date of this order.

¶35    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney John P. Buran shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $9,102.97.

¶36    IT IS FURTHER ORDERED that, to the extent he has not already done so, Attorney John P. Buran shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶37    IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.29(4)(c).

¶38    SUSAN M. CRAWFORD, J., did not participate.